# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ALLAN DELANGE, Board of Trustees Chairman, and WILLIAM BLUMM, Board of Trustees Secretary, on behalf of NORTHWEST INDIANA PAINTERS WELFARE FUND; JAMES MITCHELL SR., Board of Trustees Chairman, and JOHN ARVIN, Board of Trustees Secretary, on behalf of NORTHWEST INDIANA PAINTERS JOINT APPRENTICESHIP & TRAINING TRUST FUND; and, NORTHWEST INDIANA LOCAL 460, DISTRICT COUNCIL 91, IUPAT, AFL-CIO,<br><br>        Plaintiffs,<br>    v.<br><br>DAWN M. CURBOW d/b/a DC2 CONSTRUCTION, INC.,<br><br>        Defendant. | 2:06-CV-379-PPS-APR |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' verified application for entry of a default order and judgment against Dawn M. Curbow d/b/a DC2 Construction, Inc. [DE 27]. For the reasons discussed below, the motion is **GRANTED in part** and **DENIED in part.**

## BACKGROUND

Plaintiffs in this suit are the Northwest Indiana Painters Local 460, District Council 91, IUPAT (the "Union Plaintiff"), and several trustee-fiduciaries who are suing on behalf of their respective trust funds ("Trustee Plaintiffs") to collect delinquent employee contributions owed by DC2 Construction under a collective bargaining agreement between it and the Union Plaintiff [DE 1]. The Trustee Plaintiffs allege in Count I a claim against DC2 Construction under Sections 502 and 515 of ERISA. *See* 29 U.S.C. §§ 1332 and 1145. The Union Plaintiff on the

other hand alleges a claim in Count II against DC2 Construction under Section 301 of the Labor-Management Relations Act ("LMRA"). *See* 29 U.S.C. § 185. In Count III, the Union Plaintiff also asserts a state law claim against Ms. Curbow personally.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

Plaintiffs served the complaint and summons by certified mail, on December 11, 2006 [DE 5]. *See* Indiana Trial Rule 4.1(A)(1). Defendants failed to appear, plead, or otherwise defend the lawsuit, as required by the Federal Rules of Civil Procedure. Accordingly, in June 2007, the clerk entered default under Rule 55(a) [DE 11]. The Court, however, denied a motion for default judgment due to insufficient evidence as to damages, and ordered Defendants to produce documents responsive to Plaintiffs' damages allegations [DE 12]. Between October 2007 and December 2007, the Court twice ordered Ms. Curbow to show cause why she should not be held in contempt for failure to produce the ordered documents [DE 14 & 17]. The case was then stayed, in January 2008, pursuant to notice that Defendants had filed for Chapter 13 Bankruptcy relief [DE 20 & 21].

The case was reinstated in February 2010 [DE 23]. At the subsequent show cause hearing, which Ms. Curbow attended, the Court ordered Plaintiffs to file proof of damages and advised Ms. Curbow of her right to file a response to the entry of default [DE 25]. Plaintiffs filed the pending motion for default judgment, including detailed support for the claimed damages [DE 27]. Ms. Curbow did not respond. Plaintiffs seek a judgment for (1) $23,918.81 in principal contributions for the period of September 14, 2004 through May 27, 2008; (2) $4,472.24 delinquent deductions and interest for that same period; (3) $7,785 in attorneys' fees,

and $350 in court costs; and (4) statutory post-judgment interest [*Id.*].

## DISCUSSION

Federal Rule of Civil Procedure 55 governs the entry of defaults and default judgments. *See Lowe v. McGraw-Hill Cos., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004). Prior to obtaining a default judgment under Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a). *See Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.,* 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). Under Rule 55(a), the clerk is to enter the default of a party against whom a judgment is sought when that party has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a).

**I.     Default Judgment Against DC2 Construction Is Appropriate.**

Because the clerk has already entered a default, this Court may now enter a default judgment under Rule 55(b)(2). But the Court exercises discretion in doing so. *See O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1398 (7th Cir. 1991). A default judgment establishes, as a matter of law, that the defendant is liable to the plaintiffs for each cause of action in the complaint. *E360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). Moreover, all well-pleaded allegations of the complaint will be taken as true. *Id.* at 605.

Courts may consider a number of factors when deciding a motion for default judgment. These factors include the amount of money potentially involved, whether material issues of fact or issues of substantial public importance are at issue, whether the default is largely technical, whether plaintiff has been substantially prejudiced by the delay involved, and whether the grounds for default are clearly established or are in doubt. 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* § 2685 (3d ed. 1998); *see also American Nat'l Bank &*

*Trust Co. of Chicago v. Alps Elec. Co., Ltd.*, No. 99 C 6990, 2002 WL 484845, at *1 (N.D. Ill. Mar. 29, 2002) (citing *Federal Practice and Procedure: Civil* § 2685).

In this case, the factors listed above weigh in favor of default judgment against DC2 Construction. There are very few material issues of fact and the grounds for default are clearly established. There are no issues of substantial public importance here, and the default is not simply a technicality, as Defendants have not pleaded or appeared in this matter since the lawsuit was filed in November 2006. Plaintiffs seek a relatively small amount of money. Defendants' refusal to respond to Plaintiffs' complaint prejudices Plaintiffs by delaying their receipt of the money at issue. Thus, the Court finds that a weighing of these competing factors comes out in favor of Plaintiff, and default judgment against DC2 Construction is appropriate.

**II.     Default Judgment Against Ms. Curbow Individually Is Not Proper.**

Plaintiffs do not provide a basis for the Court to enter a default judgment against Ms. Curbow individually. Specifically, Plaintiffs have not shown that Ms. Curbow's actions entitle Plaintiffs to pierce DC2 Construction's corporate veil. Nor have Plaintiffs shown that Ms. Curbow is personally liable as an ERISA fiduciary.

**A.     Plaintiffs Cannot Pierce the Corporate Veil.**

Plaintiffs seek recovery against Ms. Curbow personally for DC2 Construction's liability under ERISA and LMRA, despite that Ms. Curbow was a not party to the CBA [DE 1, Count III]. Individuals acting as corporate officers, however, generally are not personally liable for a corporation's debts, including its ERISA and LMRA obligations. *See Plumbers' Pension Fund, Local 130 v. Niedrich*, 891 F.2d 1297, 1299 (7th Cir. 1989); *Loss v. Blankenship*, 673 F.2d 942, 946 (7th Cir. 1982); *Laborers' Pension Fund v. Paragon Pool Const., Inc.*, No. 00C 2408, 2001

4

WL 218642, at *1 (N.D. Ill. Jan. 16, 2001). Still, courts have permitted suits against non-parties to a CBA to prevent violations of such agreements from going unremedied. *Loss*, 673 F.2d at 948 (citing cases). For example, where a CBA is executed on behalf of a corporation by an individual for whom the corporation is an alter ego, the controlling individual is the real employer and may be liable for breaches of the agreement on that basis. *See Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 460 (7th Cir. 1991); *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312-13 (7th Cir. 1987).

The standard for showing that the corporate form was disregarded is exacting. *See Nat'l Soffitt & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) ("The burden of proof falls on the party seeking to pierce the corporate veil to establish that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice."). The complaint, however, does not contain allegations showing that DC2 Construction was Ms. Curbow's alter ego, or other allegations that would warrant piercing the corporate veil. The caption indicates that Ms. Curbow is "doing business as" DC2 Construction. But this, alone, does not show that DC2 Construction was her alter ego. *See Trustees of Cent. Laborers' Pension, Welfare & Annuity Funds v. Lepinski*, No. 07-cv-14, 2008 WL 2168875, at *2 (S.D. Ill. May 23, 2008). Without evidence that Ms. Curbow disregarded the corporate form, the Court has no basis for finding Ms. Curbow personally liable under a veil piercing theory.

### B. Ms. Curbow Is Not an ERISA Fiduciary.

Plaintiffs' state law claim (Count III) alleges that Ms. Curbow is personally liable as a fiduciary with respect to the payroll deductions required under the CBA [DE 1, Count III]. This also fails to provide a basis for a judgment against Ms. Curbow individually.

As an initial matter, Count III is preempted by the LMRA and ERISA. Plaintiffs' allegations do not clarify the cause of action they intend to set forth in Count III. Their allegation that the Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1367, however, indicates that Count III asserts a state law claim based on DC2 Construction's alleged breach of the CBA [DE 1, Count III]. In cases where allegations are predicated on the breach of a collective bargaining agreement, state law is preempted and the claim is governed by the LMRA. *See In re Bentz Metal Products Co., Inc.*, 253 F.3d 283, 285-286 (7th Cir. 2004) ("it is well-understood that a claim for breach of a collective bargaining agreement is preempted" and is to be governed by substantive federal law under section 301 of the LMRA); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 768 (7th Cir. 1991). ERISA also preempts Count III because that count is premised on the existence of an employee benefit fund. *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 778 (7th Cir. 2002) (ERISA preempts state law causes of action for which the existence of a pension plan is a critical element); *Central States, Southeast and Southwest Areas Pension Fund v. Denny*, 250 F. Supp. 2d 948, 955 (N.D. Ill. 2003) (same).

Turning to Count III's substantive allegations, Plaintiffs allege in that count that Ms. Curbow is personally liable for DC2 Constructions' obligations as a fiduciary [DE 1, Count III]. Specifically, Plaintiffs allege that the delinquent payroll deductions that DC2 Construction owed

6

under the CBA are assets with respect to which Ms. Curbow is a fiduciary [*Id.*].

These allegations, however, do not show that Ms. Curbow is personally liable as an ERISA fiduciary. Under ERISA, a person is a fiduciary if he "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i).[1] ERISA further provides that any plan fiduciary is personally liable for losses to the plan. 29 U.S.C. § 1109(a). But these provisions do not upset the general rule that individuals are not liable for corporate debt. *Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir. 1996).

The Seventh Circuit has contemplated the existence of exceptions to the rule that individuals are not liable for corporate debt, but those are extremely limited, and, in any case, do not apply here. In *Sullivan*, the Seventh Circuit specifically held that individual employers are liable under Section 1145 of ERISA for unpaid plan contributions where they specifically accept contractual responsibility for corporate liability. *Id*. This exception, however, applies only when the individual defendant himself is a party to the agreement. *See Niedrich*, 891 F.2d at 1302. Here, only DC2 Construction, not Ms. Curbow individually, is a party to the CBA [DE 27-2 at 2].

Count III's allegation that the delinquent payroll deductions are "assets" also does not show that Ms. Curbow is personally liable as an ERISA fiduciary. In *Hotel Emp. & Restaurant Emp. Int'l. Union & Welfare Fund v. Billy's 1870*, No. 03 C 8337, 2004 WL 1879986 at *2 (N.D. Ill. Aug. 12, 2004), the court examined when and how fiduciary obligations are conferred on employers who fail to make contributions to ERISA funds. *Billy's* found that contractual

---

[1] There are two other ways to be deemed a fiduciary under ERISA, neither of which are material to this case. *See* 29 U.S.C. § 1002(21)(a)(ii) and (iii).

7

language classifying unpaid contributions as plan assets, alone, is not enough to confer fiduciary status upon corporate officers. *Id.* Accordingly, *Billy's* observed that the classification of a contribution as a plan asset does not automatically transform corporate officers into plan fiduciaries. *Id.* Rather, a corporate officer does not incur personal liability without a clear indication that he has contractually committed to such an undertaking. *Billy's*, 2002 WL 1879986 at *2; *see also Nat'l Roofing, Indus. Pension Fund v. Kelso Inc.*, No. 2:02-CV-127, 2005 WL 2708345, at *4-*5 (N.D. Ind. Jun. 6, 2005); *Motion Picture Tech. & Film Editors Local 780 Pension Fund v. Astro Color Labs., Inc.*, No. 01 C 2096, 2002 WL 596364 at *3 (N.D. Ill. Apr. 17, 2002); *Chicago Dist. Council of Carpenters Pension Fund v. Angulo*, 150 F. Supp. 2d 976, 978 (N.D. Ill. 2001).

Thus, even if the delinquent contributions owed to the Plaintiffs are plan assets, and even if Ms. Curbow had authority over those assets as DC2 Construction's president, that would not establish that Ms. Curbow was an ERISA fiduciary. To establish that, Plaintiffs would need to show that she knowingly undertook a fiduciary duty with respect to the plan assets, either by showing a personal contractual undertaking, or by disregarding the corporate form to allow Plaintiffs to pierce the corporate veil. *See Kelso Inc.*, 2005 WL 2708345, at *5. But, as noted above, Plaintiffs provide no evidence to support a "piercing the corporate veil" theory of recovery. And, the fact that Ms. Curbow signed the CBA only as an agent of DC2 Construction, not in her individual capacity, suggests she did not contractually commit to personal liability for ERISA contributions. *See Billy's*, 2002 WL 1879986 at *2.

### III. Plaintiffs' Evidence of Damages

Normally, upon considering a motion for default judgment, a court must have a hearing to determine damages. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). In cases where damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits, however, such a hearing is unnecessary. *See O'Brien*, 998 F.2d at 1404 (citing *Dundee Cement Co.*, 722 F.2d at 1323); *E360 Insight*, 500 F.3d at 602.

To support their claim of an ERISA violation, Plaintiffs submit an affidavit from Arlene David, Plaintiffs' auditor [DE 27-1], who attests that DC2 Construction failed to make timely contributions to Plaintiffs' trust funds from September 14, 2004 through May 27, 2008 [*Id*.] The supporting documentation attached to Ms. David's affidavit shows that, pursuant to ERISA Section 503(g)(2), 29 U.S.C. § 1132(g)(2), DC2 Construction owes Plaintiffs $20,392.29 in principal contributions for the period of September 14, 2004 through May 27, 2008:

|  | **Contribution Due ($)** |
|---|---|
| **2005** | $40.00 |
| **2006** | $16,011.96 |
| **2007** | $4,340.33 |
| **Total** | $20,392.29 |

[DE 27-1, Schedule B.]

Under ERISA, DC2 Construction also owes 15% liquidated damages on the delinquent contributions in the amount of $3,058.81 [*Id*.]. In addition, DC2 Construction owes $450 in audit fees and $17.68 for mileage, for a total amount of **$23,918.81** [ $20,392.29 + $3,058.81 + $450 +

9

$17.68] [*Id.*].

Plaintiffs have also submitted an affidavit from Henry Sierra, a business representative for the Union Plaintiff, to support their ERISA claim [DE 27-2]. The supporting documentation attached to Mr. Sierra's affidavit shows that DC2 Construction owes Plaintiffs **$4,472.24** in delinquent deductions and interest for the period of September 14, 2004 through May 27, 2008 [*Id.*].

Under ERISA, Plaintiffs are also entitled to **$7,850** in attorneys' fees, and **$350** to reimburse them for the cost of filing this lawsuit. Plaintiffs' attorney, Paul T. Berkowitz, submitted an affidavit showing that Plaintiffs incurred $7,850 in attorneys' fees, at a rate of $175 per hour, and $350 in court costs [DE 27-3]. The Court finds that $7,850, the final lodestar amount, is reasonable and appropriate. *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003) (noting that a lodestar amount is obtained by multiplying the number of hours an attorney reasonably worked on the litigation by a reasonable hourly rate).

## CONCLUSION

For the foregoing reasons, Plaintiffs' Verified Application to Court to Enter an Order and Default Judgment Against Defendant Dawn M. Curbow d/b/a DC2 Construction, Inc. [DE 27] is **GRANTED** as to DC2 Construction, Inc. only, and **DENIED** as to Dawn M. Curbow individually. Defendant DC2 Construction, Inc. is **ORDERED** to pay:

(1) **$23,918.81** in principal contributions, interest and audit fees for the period of September 14, 2004 through May 27, 2008;

(2) **$4,472.24** in delinquent deductions and interest for the period of September 14, 2004 through May 27, 2008; and

10

(3) $**7,850** for attorneys' fees, and **$350** in costs

for a total of **$36,591.05**. The Clerk is directed to enter **FINAL JUDGMENT** stating that Plaintiffs are entitled to the relief ordered herein, as well as post-judgment interest as allowed by law. The Clerk is further directed to treat this matter as **TERMINATED**.

**SO ORDERED**.

ENTERED: May 12, 2010

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT